UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JANE LABORDE,

              Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

              Defendant.

NO.  C07-584CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

      Plaintiff Jane LaBorde appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33 and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court affirms the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

      Plaintiff is a fifty-two-year-old female, forty-five years old at the alleged disability onset date.  She completed the tenth grade and has training as a certified nurse's assistant.  She has work experience as a certified nursing assistant, an occupational therapy assistant, and a laborer.

      Plaintiff applied for SSI and DIB in August 2001, alleging disability since April 13, 2001 due to

ORDER - 1

1  hepatitis C, depression, pain disorder, and left eye blindness.  Her claim was denied initially and upon
2  reconsideration, and she timely requested a hearing.

3    A *de novo* hearing before ALJ Edward Nichols was held on May 4, 2004, for which an
4  unfavorable decision issued on July 26, 2004.  Administrative Record ("AR") at 15-26.  The Appeals
5  Counsel denied review of the ALJ's decision and Plaintiff appealed to this Court.  In 2006 this Court
6  remanded the case for further proceedings.

7    On June 19, 2006, ALJ Nichols conducted a second hearing.  AR at 728-58.  The ALJ heard
8  testimony from two witnesses: Plaintiff, who was represented by counsel, John Gustad, Esq., and a
9  vocational expert.  *Id*.  On October 24, 2006, the ALJ issued a decision again finding Plaintiff not
10  disabled.  *Id*. at 579-99.  Plaintiff again requested review by the Appeals Counsel and review was denied,
11  rendering the ALJ's decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 422.210
12  (2006).  On May 7, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final
13  decision.  Dkt. No. 3.

14                                              II. JURISDICTION

15    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g)
16  and 1383(c)(3).

17                                          III. STANDARD OF REVIEW

18    Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of
19  social security benefits when the ALJ's findings are based on legal error or not supported by substantial
20  evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).
21  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as
22  a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S.
23  389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for
24  determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that
25  might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to
26  examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of
27  the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is
28  ORDER - 2

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Ms. LaBorde bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded.

## V. THE ALJ'S FINDINGS

Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  AR at 581, Finding 2.

Step Two: The ALJ found Plaintiff has the severe impairments of: blindness in the left eye, hepatitis C, pain disorder/somatoform disorder, facial pain of undetermined etiology, and depression.  *Id.*, Finding 3.

Step Three: The ALJ found Plaintiff's impairments did not meet or equal the requirements of any listed impairment.  *Id.* at 582, Finding 4.  The ALJ next determined that Plaintiff retained a RFC for a range of light work.  *Id.*, Finding 5.

Step Four: The ALJ found that Plaintiff could not perform any past relevant work.  *Id.* at 597, Finding 6.

Step Five: The ALJ determined that Plaintiff could perform a significant number of other jobs in the national economy, including work as a mail room clerk and as a marking clerk.  The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA.  *Id.* at 597-98, Finding 10-11.

ORDER - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI. ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in determining Plaintiff's RFC, considering her psychological evaluations, and in full compliance with statutory requirements?

2.      Did the ALJ err in the hypothetical question presented to the Vocational Expert ("VE")? Dkt. No. 15 at 1.

# VII. DISCUSSION

*A.      The ALJ did not err in determining Plaintiff's RFC.*

The ALJ determined Plaintiff retained the RFC to perform a range of light work.  AR at 582. Plaintiff challenges the RFC determination based on the ALJ's failure to: (1) properly evaluate the opinions of two examining psychologists; (2) properly evaluate the opinions of a nonexamining psychologist; and (3) determine the RFC in compliance with Social Security regulations.  Dkt. 15 at 10-16.

Plaintiff asserts that the ALJ erroneously rejected the opinions of examining psychologists John L. Shelton, Ph.D., and Frank J. Hammer, Ph.D.  To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  *Id.*  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes,* 881 F.2d at 751 (internal citations omitted).  The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor, may be upheld. *Morgan v. Commissioner* 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes,* 881 F.2d at 751-55; *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir. 1995).

1          1.    Examining Psychologist, Dr. Shelton

2          In July 2006 Dr. Shelton examined Plaintiff and performed psychological tests.  AR at 653-659.

3  Plaintiff argues that the ALJ did not address Dr. Shelton's opinion that she is moderately limited in the

4  ability to respond to work pressures and changes in routine work setting, and did not present these

5  limitations in the hypothetical question to the VE.  Dkt. 15 at 11.  Defendant argues that the omissions

6  amount to harmless error because the ALJ's finding that Plaintiff could have only limited co-worker and

7  public contact, and would be limited to simple, repetitive tasks, adequately accounts for Dr. Shelton's

8  opinion that Plaintiff had moderate limitations in responding appropriately to work pressures and in

9  changes to a routine work setting.  Dkt. 16 at 12.  This Court agrees with Defendant.  Although the ALJ

10  summarized the majority of Dr. Shelton's findings, he did not specifically mention the findings of "slight"

11  and "moderate" mental limitations, as indicated by a check-box form filled out by Dr. Shelton.  AR at

12  657-58.  The ALJ analyzed in detail Dr. Shelton's written examination notes, but, as Plaintiff points out,

13  he did not discuss the accompanying check-box form in which Dr. Shelton checked that Plaintiff had

14  several "slight" limitations, defined as "some mild limitations in this area, but the individual can generally

15  function well," and "moderate" limitations defined as having a "moderate limitation in this area but the

16  individual in still able to function satisfactorily."  *Id.*  However, the Court finds the omission harmless

17  error because the limitations are reported by Dr. Shelton as being only "slight" and "moderate," which is

18  consistent with the ALJ's ultimate conclusion that Plaintiff could perform the jobs of mail room clerk and

19  marking clerk, both of which jobs the ALJ noted were "routine, non-public work."  AR at 598.  Even

20  assuming Plaintiff is moderately limited in the ability to respond to work pressures and changes in routine

21  work setting, limitation to routine, non-public work accounts for such limits.  The Court also notes that

22  the ALJ's analysis of Dr. Shelton's accompanying examination notes include the doctor's overall

23  observation that Plaintiff's depression would not prevent her from working and that she was capable of

24  some work, which the ALJ noted as consistent with the bulk of her file.  AR at 595.

25          Plaintiff also argues that the ALJ incorrectly rejected other portions of Dr. Shelton's opinion; that

26  the ALJ found Dr. Shelton's low Global Assessment Functioning ("GAF") score assignment of 45

27  inconsistent with Dr. Shelton's finding that Plaintiff is capable of some work.  AR at 594-95.  The ALJ is

28  ORDER - 6

1   responsible for weighing medical evidence and may reject a medical opinion where it is inconsistent.

2   *Morgan* 169 F.3d at 603.  The ALJ's finding that Dr. Shelton's opinion is partially inconsistent is

3   based on legitimate and specific reasons, supported by the record.

4          Plaintiff also argues that the ALJ found that: "Dr. Shelton did not really analyze the fact that

5   claimant appeared to exaggerate her symptoms on the MMPI.  I find that negatively affects her

6   credibility" and assigns error because the ALJ did not acknowledge that the invalid results could

7   alternatively be due to a "[s]evere psychopathology" as noted as a possibility by Dr. Shelton.  AR at 595;

8   656.  The ALJ recognized that Dr. Shelton gave several possible reasons for the invalid test results,

9   including: possible carelessness, poor reading ability, a desire to "fake bad" or drug ingestion, however

10  the ALJ did not mention Dr. Shelton's additional listed possibility of a severe psychopathology.  AR at

11  594.  Regardless, the Court notes that Dr. Shelton was not diagnosing a "severe psychosis" but listed it as

12  one of several possible reasons the test results were invalid.  Further, the ALJ relayed these findings in the

13  context of Plaintiff's credibility and not in making a determination concerning her mental status; he noted

14  the possibility of Plaintiff's exaggeration negatively impacted her credibility.

15          2.      Examining Psychologist, Dr. Hammer

16          Dr. Hammer examined Plaintiff on four occasions between 2001 and 2004 for the purpose of

17  evaluating Plaintiff for her disability claim.  Plaintiff assigns error to the ALJ's rejection of Dr. Hammer's

18  opinions, arguing: substantial evidence does not support the ALJ's conclusion that Dr. Hammer did not

19  provide objective findings supporting his opinion that Plaintiff is unable to work; and, that the reasons

20  cited by the ALJ for rejecting Dr. Hammer's opinions were improper.

21          Throughout the decision, the ALJ heavily critiques Dr. Hammer's opinions and diagnoses as being

22  based on Plaintiff's subjective complaints, without support of objective medical findings.  The ALJ

23  expresses a clear lack of confidence in most of Dr. Hammer's findings, based on a lack of objectivity both

24  in his clinical findings and based on his biased financial motivation for examining Plaintiff.  For example,

25  the ALJ noted regarding Dr. Hammer's August 2001 examination of Plaintiff: "[h]e wrote that she had

26  some functional limits such as trouble concentrating and fatigue due to hepatitis C, but those appear to be

27  solely based on claimant's subjective reports" and that "Dr. Hammer's evaluation that claimant could not

28  ORDER - 7

work at all is not supported by the record, but I give weight to his recommendation that claimant seek

help from vocational rehabilitation." AR at 585. Similarly, regarding Dr. Hammer's October 2001

examination the ALJ noted: "Dr. Hammer's conclusions appeared to be largely based on claimant's

subjective claims which are not completely credible as analyzed throughout this decision. He made

certain observations that did not correlate with his findings. Claimant was able to interpret two out of

three proverbs, yet Dr. Hammer felt she had problems with reasoning. Dr. Hammer's conclusions are not

supported by objective evidence of limits and this is given little weight." AR at 586. Likewise for Dr.

Hammer's January 2002 examination the ALJ noted:

> Dr. Hammer's evaluation was virtually identical to his August 2001 evaluation. ...He again
> wrote that claimant had difficulty interpreting proverbs just because she had not heard of
> one of the three proverbs he presented her with in a prior evaluation. I note that the
> medical record does not support that hepatitis C provided claimant with severe fatigue or
> any medical problems at all. Further, Dr. Hammer is not qualified to comment on physical
> issues. This is given very little weight.

AR at 587.

Lastly, the ALJ noted that in May 2004,

> ...[C]laimant was referred to Dr. Hammer again by her attorney. ...[S]he had too many
> changes at home to deal with, which is exactly what Dr. Hammer recorded her as saying
> back in October 2001. In fact, many of his observations at this appointment were identical
> to information that he provided in 2001... It appears that Dr. Hammer may not have
> examined claimant fully in May 2004 and just cut and pasted his old information into the
> form. For no clear reason, he rated claimant's current GAF at 44 and assessed her with a
> personality disorder due to low self esteem. ...This opinion appears to have been solicited
> by claimant's attorney. Claimant only saw Dr. Hammer in the context of applying for
> benefits, and she was motivated to exaggerate her problems in order to get those benefits.
> Dr. Hammer basically parroted what claimant told him and then concluded she could never
> work. He did not provide objective bases for determining claimant's work capacity. ...Dr.
> Hammer's conclusions are not supported by the bulk of the record.

AR at 593-94.

In 2006, this Court remanded Plaintiff's case back to ALJ Nichols for further proceedings based

in part on his comments about Dr. Hammer. Regarding the ALJ's prior comments about Dr. Hammer

Magistrate Judge Theiler recommended on remand:

> A determination that utilizes speculation founded on information outside the record
> deprives a claimant of the ability to cross-examine or rebut the assumptions relied on, and
> is impossible to review on appeal. *Burkhart v. Barnhart*, 856 F.2d 1335, 1341 (9th Cir.
> 1988). *See also Miles v. Chater*, 84 F.3d 1397, 1399-1401 (11th Cir. 1996) (remanding a

ORDER - 8

case to a different ALJ because of comments that a doctor's determinations "almost invariably" were favorable to the claimant's attorney's clients). Furthermore, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 727 (9th Cir. 1998).

> ...On remand, the ALJ should reevaluate Dr. Hammer's opinions based on legally sufficient grounds.

AR at 719-20.

In the present case, ALJ Nichols again found Dr. Hammer's opinions not credible and gave them little weight. Plaintiff argues the ALJ's grounds for rejecting Dr. Hammer's opinions are again not proper and not supported by substantial evidence. With respect to grounds for rejecting medical reports, the *Reddick* Court found that, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report. Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report." *Reddick*, 157 F.3d at 726. Accordingly, the *Reddick* Court concluded:

> We clarify here that, in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. In the present case, the fact that Dr. Jacobson drafted response letters should have no adverse affect on his credibility or the weight of his determination. Dr. Jacobson's letters were consistent with his findings spanning several years. His opinion was drawn from three and a half years of treatment and is supported by medical reports in the record. His clinical findings were not contradicted by any of the examining physicians.

*Id.*

Therefore, an ALJ may not reject an opinion solely on the basis for which it was obtained but may consider it as a factor where a report is also in question for consistency, internally or in comparison to the rest of the record. In the present case, the ALJ did not give Dr. Hammer's alleged bias as the sole reason for rejecting his opinions; he also made note of specific references in Dr. Hammer's reports which he found unsupported by objective evidence. This Court finds those reasons given by the ALJ, some of which are set forth above, specific and legitimate and supported by substantial evidence in the record.

      3.    <u>Nonexamining Psychologist, Doctor Clifford</u>

ORDER - 9

1    Plaintiff asserts that the ALJ erroneously rejected the opinion of nonexamining psychologist

2    Thomas Clifford, Ph.D.  Dr. Clifford did not examine Plaintiff, but in June 2002 he evaluated Plaintiff's

3    case file and concluded, among other things, that Plaintiff's pain disorder gave her "moderate" limitations

4    in maintaining social functioning and in concentration, persistence, or pace (AR at 198), a conclusion the

5    ALJ did not fully agree with.  AR at 589.  Instead, the ALJ found Plaintiff was only "mildly" limited in

6    the two areas.  *Id.*  Plaintiff argues that the ALJ therefore "substituted his judgment for that of a trained

7    psychologist, contrary to law," and asserts that Plaintiff is extremely socially isolated, as consistent with

8    Dr. Clifford's finding of a moderate limitation in social functioning.  Dkt. 12 at 14.  Plaintiff also argues

9    that a "moderate" limitation is also supported by the findings of reduced concentration or pace by

10   Doctors Shelton and Hammer.  Regardless, as discussed above, the ALJ was not in err in giving less

11   weight to the opinions of those two examiners.

12       The ALJ was not required to agree with Dr. Clifford nor to adopt his findings in whole.  The ALJ

13   has discretion to credit the portions of an opinion that are supported by the record.  In this case, the ALJ

14   analyzed Dr. Clifford's conclusions but disagreed with respect to the level of limitation in these two

15   areas.  The ALJ gave Dr. Clifford's opinion on the two areas partial weight because: "[t]he record shows

16   that claimant socialized with friends and family, and was able to arrange her medical around taking care

17   of a very sick relative.  The bulk of the record supports that claimant has no limits on activities of daily

18   living, mild limits on social functioning, mild limits on concentration, persistence, and pace, no episodes

19   of decompensation..."  AR at 589.  The record before the Court is consistent with the ALJ's comments

20   on Plaintiff's social activities.  Because the ALJ set forth specific reasons for the weight assigned to Dr.

21   Clifford's opinion, supported by substantial evidence in the record, there is no error.

22       4.    Sustained Basis

23       Plaintiff asserts that the ALJ erred in failing to assess her Residual Functional Capacity on a

24   "sustained basis," taking into account her pain disorder, which Plaintiff asserts is contrary to SSR 96-8p[2]

25   _____

26   [2] SSR 96-8p provides in relevant part:  Ordinarily, RFC is an assessment of an individual's ability to do
     sustained work-related physical and mental activities in a work setting on a regular and continuing basis.

27   A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

28   ORDER - 10

and *Reddick v. Chater*, 157 F.3d 715, 724 (1998).  Dkt. 12 at 15.  In *Reddick*, the Court found error

where the ALJ did not account for Plaintiff's chronic fatigue with respect to her ability to undertake

sustained work.  Here, Plaintiff has not been diagnosed with chronic fatigue, but a pain disorder, for

which she argues doctors Clifford, Hammer, and Shelton assigned "moderate" deficiencies in

concentration, persistence or pace.  As discussed above, although the ALJ found the pain disorder to be

severe at step 2, he assigned the resulting limitation in concentration, persistence or pace as "mild."  The

ALJ further noted that:

> She is fully functional in her activities of daily living yet reports them vaguely.  She claims
> she has no friends or social function, but sees her friend Sharon often and had friends bring
> her to various evaluations.  She sees her grandchildren frequently, travels to see friends,
> and has company over, as detailed above.  When asked why she cannot work, she said she
> got stressed out, which is not a sufficient reason for disability.  Claimant has settled into a
> life of low activity that involves her recreation, self-care, and family, which does not mean
> that she cannot do any work.  She has been able to care for a sick relative.  Her pain
> complaints are very inconsistent with her negative opiate drug screens.  It appears she may
> have diverted her medication to others.

AR at 597.

Thus, the ALJ took a more limited view of Plaintiff's pain.  When assessing her RFC he found that

Plaintiff had severe impairments of "blindness in the left eye, hepatitis C, pain disorder/somatoform

disorder, facial pain of undetermined etiology, and depression" before concluding that she could "lift and

carry 20 pounds occasionally, lift and carry ten pounds frequently, stand and/or walk for six hours in an

eight hour day, sit for six hours in an eight hour day, do unlimited pushing and pulling.  She can have only

limited coworker and public contact.  She can do simple, repetitive tasks."  AR at 582.  Thus, the ALJ

did consider Plaintiff's pain disorder when evaluating her RFC in the context of sustained work as

contemplated by SSR-96-8p.

Plaintiff also asserts that the ALJ failed to address the impact of Plaintiff's reaction to stress,

although doctors Shelton and Hammer found stress management to be difficult for her.  As discussed

above, the ALJ gave reduced weight to the opinions of doctors Shelton and Hammer; however, the ALJ

did limit Plaintiff to "only limited coworker and public contact.  She can do simple, repetitive tasks" (AR

at 582), which is fully consistent with the ALJ's findings with respect to her limitations in this area.

Accordingly, considering the opinions of the examining and nonexamining psychologists, and the

ORDER - 11

1   statutory requirements, the ALJ's determination regarding Plaintiff's RFC was based on substantial

2   evidence and therefore was not in error.  *Bayliss* 427 F.3d at 1214.

3          *B.     The ALJ did not err in presenting the hypothetical questions to the vocational expert.*

4          Plaintiff next contends that the hypothetical question the ALJ presented to the VE was in error

5   because it was incomplete as it did not include all of Plaintiff's limitations, and did not explicitly include a

6   limitation to "simple" work.  Dkt. 12 at 16-17.  Specifically, Plaintiff asserts that the limitations resulting

7   from her pain disorder and depression, and a need for frequent rest breaks and variations in performance,

8   were not included.  Plaintiff bases this argument on assigning error to the RFC determination, as

9   discussed above.  *Id.* at 12.  The ALJ found that although Plaintiff could not perform the full range of

10  light work, she could perform a significant range of light work with the additional limitations of limited

11  coworker and public contact, and performing simple, repetitive tasks.  As addressed above, this Court

12  finds the RFC determination was based on substantial evidence and not in error; thus, the hypothetical

13  questions asked of the VE based on that RFC were also not in error.  The ALJ appropriately used a

14  vocational expert to find examples of light-work jobs Plaintiff could perform, based on the RFC he

15  assigned.

16         Plaintiff also asserts that the ALJ found her capable of "simple" work but failed to include a

17  limitation to simple work in the hypothetical question to the VE, and that the mail clerk and marker job

18  both require more than simple reasoning skills. Dkt. 12 at 17.  Specifically Plaintiff argues that only

19  reasoning level 1 is consistent with simple work and that the jobs of marker and mail clerk are assigned

20  reasoning levels of 2 and 3, respectively.[3]  However, Plaintiff cites no authority or regulation in support

21  of her assertion that only reasoning level 1 is consistent with simple work, nor has this Court found any

22  rule or regulation consistent with the assertion.  Without any supportive authority for Plaintiff's

23  argument, this Court cannot assign error.  Here, based on the ALJ's finding that Plaintiff has "mild

24  difficulties in maintaining concentration, persistence, or pace," the limitation to performing simple and

25

26  ─────────────────

27  [3] The DOT assigns General Educational Development reasoning levels 1-6 to jobs representing reasoning, math and language skill levels.

28  ORDER - 12

1   repetitive tasks is reasonable, and is supported by substantial evidence in the record, discussed in detail by

2   the ALJ.  As discussed above, where the ALJ's findings are based upon substantial evidence in the

3   record, the Commissioner's decision to deny benefits will not be reversed.  *Bayliss*, 427 F.3d at 1214.

4

5                                    VIII. CONCLUSION

6           For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is

7   DISMISSED.

8           DATED this 24th day of April, 2008.

9

10

11                                    Carolyn R. Dimmick
                                      United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER - 13